## Case No. 13,858.

### The THAMES.

[3 Ben. 279.] [1]

District Court, S. D. New York. June, 1869. [2]

BILL OF LADING—DELIVERY OF CARGO TO WRONG PERSON—PARTIES—CASHIER.

1. Where a shipper of cotton in Savannah, on a vessel bound to New York, received for it a bill of lading, specifying that it was to be delivered to order, and drew a draft on B., V. P. & Co., a firm in New York, which he sold to a bank in Savannah, on the faith of the bill of lading as security for its payment, and endorsed the bill of lading to S., the cashier of a bank in New York, to which the draft was sent for collection, and the agent of the vessel in Savannah made a memorandum on the ship's copy of the bill of lading, that the cotton was to be delivered to B., V. P. & Co., and, on the arrival of the ship in New York, the bill for the freight on the cotton was sent to B., V. P. & Co., and the cotton was delivered to them on their request and on their endorsement of the ship's copy of the bill of lading, without any inquiry after the other copies of it, and no notice was ever given to S. of the readiness of the ship to deliver the cotton, and, the draft not being paid, he libelled her upon the bill of lading: Held, that the agents of the ship in Savannah were guilty of negligence in putting such a memorandum on the bill of lading, and the agents in New York were negligent in delivering the cotton without the production of the other copies of the bill of lading.

2. The libel was properly filed in the name of S.

[Cited in Robinson v. Memphis & C. R. Co., 9 Fed. 141.]

3. As the value of the cotton was more than the draft, the libellant was entitled to a decree

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming Case No. 13,855.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [Affirmed in Case No. 13,859. Decree of circuit court affirmed by supreme court in 14 Wall. (81 U. S.) 98.]

against the ship for the amount of the draft and interest from its maturity.

· This was a libel, filed by B. Seaman against the steamship Thames, to recover damages for the nondelivery of one hundred and eleven bales of cotton. The libel alleged that the cotton was shipped on board the Thames, at Savannah, by one Gilbert S. Van Pelt, to be carried to New York; that three bills of lading were signed, two of which were delivered to Van Pelt, and were afterwards assigned by him to the libellant; and that the ship had failed to perform them, and had refused to deliver the cotton to the libellant. A copy of the bill of lading was attached, which acknowledged the receipt of the cotton from Van Pelt, and agreed to deliver it "unto order, or to his or their assigns." The bill of lading was endorsed: "Deliver B. Seaman, cashier, or order. G. S. Van Pelt." The answer alleged, that Van Pelt was a member of the firm of Bennett, Van Pelt & Co., of New York; that he had made frequent shipments of cotton to that firm, by the line of steamers of which the Thames was one; that this cotton was shipped for that firm, and was agreed to be delivered to them, and was so delivered without notice of any other claim; and that the libellant only held the bill of lading under some arrangement for advances made on the obligation of the firm, which became insolvent after the cotton had been delivered to them, and before any demand for it had been made on the ship by the libellant. It appeared, that the libellant was cashier of the Fourth National Bank of New York, to which a draft of G. S. Van Pelt on Bennett, Van Pelt & Co., for $8,300, had been sent by the Atlanta National Bank, with this bill of lading as security. The circumstances of the transfer of the bill of lading by Van Pelt were in dispute on the evidence.

John E. Parsons, for libellant.
William Allen Butler, for claimants.

BLATCHFORD, District Judge. In this case, I think that the plaintiff became the bona fide holder, in trust for the Atlanta National Bank, for a valuable consideration, without notice, of the bill of lading of the cotton, and that he held it as collateral security for the payment of the draft on Bennett, Van Pelt & Co., and not as collateral security merely for the acceptance of that draft. The two bills of lading delivered to Gilbert S. Van Pelt, the shipper of the cotton, engaged to deliver the cotton to "order," and were duly endorsed by him, as the shipper therein named, to the libellant. The draft drawn by Gilbert S. Van Pelt on Bennett, Van Pelt & Co., was made payable to the order of the libellant, at the request of the agents in Savannah of the Atlanta Bank, who purchased it for that bank with the money of that bank, on the faith of the bill of lading as security for its payment. The

agents of the vessel in Savannah were guilty of great negligence in putting upon the copy of the bill of lading which they retained and furnished to the purser of the ship, words to the effect that the cotton was to be delivered to Bennett, Van Pelt & Co. On the strength of this the purser made out the bill for the freight to that firm, and sent notice of the arrival of the cotton to that firm, and caused the vessel to wrongfully deliver the cotton to that firm. And the agents of the ship in New York were guilty of even grosser negligence in delivering the cotton to Bennett, Van Pelt & Co. on their request, and on their endorsement of the ship's copy of the bill of lading, without inquiring after, or demanding the production of, the other two copies of the bill. The whole transaction appears, on the evidence, to have been a well contrived and successful scheme of fraud on the part of the two Van Pelts, one in Savannah and the other in New York, to obtain possession of the cotton without paying anything for it, and they were aided in this by a negligence on the part of the agents of the ship in both places, for which the ship is responsible, and without which the fraud could not have been consummated. The title to the cotton passed to the libellant by the endorsement to him of the bill of lading, to an amount, as between him and the vessel, sufficient to pay the draft, and a delivery of such cotton to any other person than the libellant was a wrongful delivery, and makes the vessel liable therefor to the libellant. The ship ought to have stored the cotton, at the risk of the libellant, until the bills of lading held by him were produced.

The testimony of Gilbert S. Van Pelt as to the transferring of the bill of lading merely as security for the acceptance of the draft, and that of James C. Van Pelt as to what transpired between him and the libellant in regard to the cotton, are entirely unworthy of credit, and I reject wholly the testimony of both of them. They are manifestly swearing to carry through the fraud they devised.

There was no laches on the part of the libellant. The ship arrived on Sunday, and, on the next day, the agents of the ship gave to Bennett, Van Pelt & Co. an order to receive the cotton from the ship, and on the latter day and the day following they received it. The ship never gave any notice to the libellant to receive the cotton, or that it was ready for delivery. This was a delivery to the wrong party, without affording to the proper party any opportunity to take his property.

Although the cestui que trust is the Atlanta National Bank, the suit is properly brought in the name of the libellant, who holds the legal title, as trustee, to the cotton and the draft. The fact that the draft and the endorsement of the bill of lading run to him by the name of "B. Seaman, cashier," do not make it necessary that, because he is, in fact, the cashier of the Fourth Nation-

al Bank of New York, the suit should be brought in the name of that bank.

As the value of the cotton, less the freight on it, is admitted to have been more than the amount of the draft, there must be a decree for the libellant for the amount of the draft, $8,300, with interest from its maturity, February 19th, 1868, with costs.

This decision was affirmed by the circuit court, on appeal. [Case No. 13,859. On appeal to the supreme court, the decree of the circuit court was affirmed. 14 Wall. (81 U. S.) 98.]